UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA and
the STATE OF MICHIGAN, ex rel.,
ASHWANI SHEORAN, RPh,

        Plaintiff-Relator,        Civil Case No. 13-10568
                                                  Hon. Linda V. Parker

v.

WAL-MART STORES EAST, LP, *d/b/a*
WALMART, a foreign corporation,
TOI WALKER, DOUG HENGER,
ALFRED RODRIGUEZ,
RICHARD LOCKARD, M.D.,
NAVEED MAHFOOZ, M.D., and
TAREK EZZEDDINE, M.D.,

        Defendants.
_____/

## OPINION AND ORDER (1) GRANTING DEFENDANT LOCKARD'S MOTION TO DISMISS SECOND AMENDED COMPLAINT (ECF NO. 58) AND (2) GRANTING WALMART DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT (ECF NO. 61)

Plaintiff-Relator ("Relator"), Ashwani Sheoran, RPh, on behalf of himself, the United States and the State of Michigan, initiated this lawsuit on February 11, 2013, filing a *qui tam* complaint under seal against Defendants (1) Walmart, (2) Toi Walker, (3) Doug Henger, (4) Alfred Rodriguez, (5) Richard Lockard, M.D., (6) Naveed Mahfooz, M.D., and (7) Tarek Ezzeddine, M.D. (Compl., ECF No. 1.) As a matter of course, on April 16, 2013, Relator filed his First Amended

Complaint ("FAC") against the same Defendants and alleging the same claims. (Am. Compl., ECF No. 3.)

On December 7, 2018, Relator filed his Second Amended Complaint ("SAC") alleging violations of (1) the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., (2) the Fraud Enforcement Recovery Act of 2009 ("FERA"), 31 U.S.C. §§ 3729–3733, (3) the Michigan Medicaid False Claims Act ("MMFCA"), MICH. COMP. LAWS § 400.601 et seq., and (4) the retaliation provisions of 31 U.S.C. § 3730(h). (Sec. Am. Compl., ECF No. 57.) The federal and state FCA claims are against all Defendants, Sec. Am. Compl. at 25–28, Pg. ID 589–592, while the FCA retaliation claim is only against Walmart, *id.* at 28, Pg. ID 592. On March 8, 2018, this Court unsealed the complaints after the United States and the State of Michigan declined to intervene. (ECF Nos. 24, 25.)

Presently before the Court are Defendant Lockard's and Defendants Wal-Mart Stores East, LP, Toi Walker, Doug Henger, and Alfred Rodriguez's (the "Walmart Defendants") respective Motions to Dismiss[1] pursuant to Federal Rule of Civil Procedure 12(b)(6). (Lockard Dismiss Mot., ECF No. 58; Walmart Dismiss Mot., ECF No. 61.) The Motions have been fully briefed. (ECF Nos. 58, 61, 62, 63, 64, 65.) Finding the facts and legal arguments sufficiently presented in the

---

[1] Defendants Tarek Ezzeddine and Naveed Mahfooz did not file motions to dismiss but answered the complaint. (Ezzeddine Answer, ECF No. 59; Mahfooz Answer, ECF No. 60.)

2

parties' briefs, the Court is dispensing with oral argument pursuant to Local Rule 7.1(f). For the reasons that follow, the Court grants both motions and dismisses all claims against Defendant Lockard and the Walmart Defendants[2].

## I. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550

---

[2] Any dismissal of Relator's SAC shall be without prejudice as to the United States. (U.S. Renewed Statement of Interest, ECF No. 66 (citing *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 455-56 (5th Cir. 2005) (holding that it is improper to dismiss claims with prejudice as to the United States in a declined qui tam case)).

3

U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Additionally, claims brought under the FCA have a heightened standard and must also comply with Federal Rule of Civil Procedure 9(b). When alleging fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b)[3].

---

[3] "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## II. Factual and Procedural Background

On or about May 2012 to January 2013, Relator worked for Walmart as a "full-time floater pharmacist." (SAC ¶¶ 7, 36–37, 166.) This lawsuit concerns observations that Relator made at various Walmart pharmacies between July 14 and August 30, 2012. (*Id.* ¶¶ 41–125.)

*Allegations Related to Defendant Lockard*

On or about July 31, 2012, Relator was assigned to work at a Walmart store in Bad Axe, Michigan. (*Id.* ¶ 73.) Upon arriving that day before 8 a.m., he observed a line of roughly ten customers waiting for the pharmacy to open—each one a patient of Defendant Lockard's. (*Id.* ¶¶ 74, 75.) Relator alleges that each of these patients was prescribed "high doses" of controlled substances—methadone, morphine sulfate, and/or oxycodone—and that Medicare or Medicaid was used in paying for them. (*Id.* ¶¶ 76–78.)

On or about August 6, 2012, while working at the same Walmart in Bad Axe, Relator observed "large numbers of controlled substances" prescribed from Defendant Lockard's office being presented to the pharmacy, and he declined to fulfill them. (*Id.* ¶¶ 97, 100.) Relator contends that Defendant Lockard's prescriptions were either false, fraudulent or submitted to the Walmart pharmacy in violation of state and federal healthcare law. (*Id.* ¶¶ 168, 172, 176.)

*Allegations Related to Walmart Defendants*

Relator also alleged that, while working at various Walmart pharmacies, he observed a customer attempting to refill prescriptions prematurely, customers presenting allegedly "high dose[ ]" prescriptions, a customer attempting to use a stolen prescription pad, and customers presenting out-of-area prescriptions. (*See id.* ¶¶ 68, 73–81, 87, 97, 114.)

Relator further alleged that he shared his observations and suspicions with his direct supervisor, Defendant Toi Walker, and with other members of Walmart management, including Defendant Doug Henger. (*Id.* ¶¶ 119–21.) Walmart investigated, and on September 12, 2012, Relator received an email stating that the investigation had been closed. (*Id.* ¶¶ 130–131, 146.) Defendant Alfred Rodriguez, a Walmart Human Resources Director, sent Relator an email stating that the investigation found "that the defined practice of filling prescriptions that are received via fax or e-scribe were not being completed properly." (*Id.* ¶ 153.)

On January 21, 2013, Relator was terminated. (*Id.* ¶ 166.)

### III. Applicable Law and Analysis

To sufficiently plead a claim under the FCA, a plaintiff must allege that:

> [1] that the defendant [made] a false statement or create[d] a false record [2] with actual knowledge, deliberate ignorance, or reckless disregard of the truth or falsity of the information; [3] that the defendant ... submitted a claim for payment to the federal government; ... and [4] that the false statement or record [was]

> material to the Government's decision to make the payment sought in the defendant's claim.

*U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 408 (6th Cir. 2016) (quoting *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 618 F.3d 505, 509 (6th Cir.2010) ("*SNAPP II*")); see also *United States ex rel. Campie v. Gilead Sciences., Inc.,* 862 F.3d 890, 902 (9th Cir. 2017).

Relator alleges that on two occasions while working in the Bad Axe Walmart, he observed patients of Defendant Lockard's present allegedly false or fraudulent prescriptions. His only evidence that the prescriptions were in fact false or fraudulent is his characterization that "these customers presented controlled substances prescriptions for high doses (ranging from 450, 600, 800 and 1200[4]) of methadone, morphine sulfate and/or oxycodone." Also, he provided one example of one of Defendant Lockard's patient's "Medical Expenses Summary." (Exh. A, ECF 57 at 32–37, Pg. ID 596–601.) This document lists the patient's prescriptions over five years and details the date filled, drug name, quantity, number of days' supply, and cost paid by the patient—along with some other information not relevant here. (*Id.*) Relator argues that this exhibit is representative "of thousands of Dr. Lockard's alleged patients," and that each entry "can be considered a separate FCA violation . . . because *if the combination of drugs* prescribed in

---

[4] The Court notes that a dosage refers to the total amount of milligrams (mg) contained within one tablet.

Exhibit A were actually taken, they would kill a person." (SAC ¶ 77 (emphasis added).)

*Defendant Lockard*

The Court concludes that Relator has failed to sufficiently plead a FCA claim against Defendant Lockard. There is an absence of facts and evidentiary support to conclude that any of Defendant Lockard's prescriptions were false or fraudulent. Relator's allegations are based on his own speculations as to Defendant Lockard's prescribing practices with *all* his patients, the proper medication dosages necessary to treat *varying* patients, and the proper administration or combination of medications for *differing* patients. Accepting Relator's claims requires this Court to make a series of unwarranted and wholly unsupported inferences.

First, Relator only observed a handful of Defendant Lockard's patients on two occasions but argues that the customers he observed represents all of Defendant's Lockard's patients. Relator alleges this without verifying or supporting that any of Defendant Lockard's prescriptions exceeded that of any particular patient's medical needs.

Second, Relator's only evidence to support an inference of falsity or fraud is his characterization that Defendant Lockard's prescriptions were "high doses" of controlled substances. Relator alleged Defendant Lockard prescribed doses of

8

methadone, morphine sulfate and/or oxycodone from "450–1200" mg. However, Relator's supporting evidence—one patient's Medical Expenses Summary—directly contradicts that allegation. It showed that not one prescription for methadone, morphine sulfate and/or oxycodone exceeded 30 mg[5] over the course of five years. (ECF No. 57 at 32–37, Pg. ID 596–601.)

Third, Relator seeks to establish that false claims were submitted to the government because one patient was charged between $1-2 (also shown in Exhibit A), which demonstrates that Medicaid or Medicare must have been used. (*Id.* ¶ 78.) This is not a specific allegation of a false claim being submitted to the government but rather a transitive inference without the supporting links.

Finally, the Court would need to infer that the government relied on Defendant Lockard's allegedly false prescriptions in making a payment to Defendant Lockard. But Relator has not alleged that the government made any payments to Defendant Lockard—nor is the Court able to infer the same.

Consequently, there are neither facts nor evidence from which this Court could conclude or infer that: (1) a false record was in fact made or created, (2)

---

[5] Assuming—for arguments sake—that Relator was not referencing the concentrate (mg) but the quantity (#) of tablets, his allegation is still rebutted by Exhibit A which shows no prescription having a quantity over 480. (ECF No. 57 at 32–37, Pg. ID 596–601.) This quantity was prescribed only in a few instances, was the highest quantity of any medication prescribed, and was always noted as a 30-days' supply. (*Id.*)

9

Defendant Lockard submitted to the government a false claim for payment, and (3) the government relied on Defendant Lockard's submission to make a payment to him. Concluding such would require this Court to make "unwarranted factual inferences." *See Sheldon*, 816 F.3d at 409 (quoting *Debevec v. Gen. Elec. Co.*, 121 F.3d 707, 1997 WL 461486, at *2 (6th Cir.1997) (table)). Having failed to satisfy the first, third, and fourth elements of a FCA claim, Relator fails to sufficiently plead a claim upon which relief could be granted. Because Relator's remaining claims are derivative or in conjunction with his FCA claim, as discussed in further detail below, they too fail.

*Walmart Defendants*

The Court concludes that Relator has failed to sufficiently plead a FCA claim against the Walmart Defendants. Relator wholly fails to identify any claims that any Walmart Defendant presented to the government, let alone sufficiently provide any factual or evidentiary support to infer that any claim was in fact false. Relator relies on his exhibit to demonstrate "specific claims" that were presented to the government. However, Exhibit A is no more than a summary of one unidentified patient's prescriptions and expenses. As discussed earlier, this cannot serve to establish a false claim because there is no factual or evidentiary support for the Court to conclude that any of the entries listed demonstrate a fraudulent prescription with an incorrect and/or improper dosage in relation to that particular

10

patient's needs.  This Court cannot accept Relator's unsupported assertions of fraud or falsity because it cannot accept his speculations, as a pharmacist, as to what constitutes "high doses" for unidentified patients from whom he had no other medical information.  Neither can it accept Relator's bare-bone assertion that each entry shows the patient used Medicare or Medicaid funds.

Having failed to satisfy the first, third, and fourth elements of the FCA claim, Relator again fails to sufficiently plead a claim upon which relief could be granted.

*Conspiracy and Retaliation*

Relator's remaining conspiracy and retaliation claims must also fail because they are derivative of his FCA claim.

The FCA's conspiracy provision establishes liability for those who "conspire[ ] to commit a violation" of § 3729(a)(1)(A) or (B) of the Act. 31 U.S.C. § 3729(a)(1)(C).  Relator's conspiracy claim fails simply because this Court has concluded that Relator failed to sufficiently allege any underlying violations of the FCA that would support it.  A claim of conspiracy to present false claims to the government cannot survive dismissal when the allegations are insufficient to show a false claim even existed. *See United States ex rel. Crockett v. Complete Fitness Rehab., Inc.*, 721 F. App'x 451, 459 (6th Cir. 2018) ("[Plaintiff's] lack of specification as to the existence of any false claim also precludes her false-claims

conspiracy count."); *see also U.S. ex rel. Winkler v. BAE Sys., Inc.*, 957 F. Supp. 2d 856, 876 (E.D. Mich. 2013).

Additionally, Relator did not allege that Walmart found any violation of any law or regulation during the course of their investigation. And Walmart's own investigatory finding that "the defined practice of filling prescriptions that are received via fax or e-scribe were not being completed properly" says nothing regarding the falsity of such prescriptions or their knowingly fraudulent presentation to the government for payment. Regardless, Relator attempts to assign knowledge of and compliance with the alleged scheme to the Individual Walmart Defendants[6] as a result of the "multiple meetings and discussions each had with Relator" about his suspicions and their choice to not act on them. (ECF No. 63 at 14, Pg. ID 766.) However, Relator's bare-bones allegation of a conspiracy also finds no support.

Finally, Relator's retaliation claim fails because he pleads no facts showing that Walmart knew that he was pursuing an FCA claim at the time of his discharge. To establish a claim for retaliatory discharge under 31 U.S.C. § 3730(h), a plaintiff must show, among other things, that his employer knew that he engaged in a protected activity and that his employer discharged or otherwise discriminated against him as a result of the protected activity." *Yuhasz v. Brush Wellman, Inc.*,

---

[6] Toi Walker, Doug Henger, and Alfred Rodriguez.

341 F.3d 559, 566 (6th Cir. 2003). Relator plead neither facts establishing that Walmart had knowledge of his intent to file an FCA claim nor that he was discharged as a result of his FCA claim (filed almost a month after his discharge). Indeed, Relator relayed his suspicions concerning the presentation of false prescriptions to the Individual Walmart Defendants, but this does not constitute notice of an intent to file an FCA claim. As such, the Court concludes that Relator has failed to sufficiently state his retaliation claim.

For the foregoing reasons, Defendant Lockard's Motion to Dismiss and the Walmart Defendants' Motion to Dismiss are granted. Relator's causes of action against Defendant Lockard—Counts I–III—are dismissed, and Relator's causes of action against the Walmart Defendants—Counts I–IV—are dismissed.

## IV. Conclusion

Accordingly,

**IT IS ORDERED**, that Defendant Lockard's Motion to Dismiss (ECF No. 58) is **GRANTED**; and

**IT IS FURTHER ORDERED**, that the Walmart Defendants' Motion to Dismiss (ECF No. 61) is **GRANTED**; and

**IT IS FURTHER ORDERED**, that Counts I–III of Relator's Second Amended Complaint (ECF No. 57) is **DISMISSED WITH PREJUDICE**[7] against Defendant Lockard; and

**IT IS FURTHER ORDERED**, that Counts I–IV of Relator's Second Amended Complaint (ECF No. 57) is **DISMISSED WITH PREJUDICE**[8] against the Walmart Defendants.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: August 20, 2019

---

[7] Any dismissal of Relator's SAC shall be without prejudice as to the United States. (*See* U.S. Renewed Statement of Interest, ECF No. 66; *see also supra* n. 2.)
[8] *Supra* n. 7.